**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KARL E. NELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | )     **Case No. 21-cv-3248 (APM)** |
| CHRISTINE E. WORMUTH, | ) |
| SECRETARY OF THE ARMY, et al., | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

**I.**

Plaintiff Karl E. Nell is a United States Army Reserve Colonel.  In or around 2011, a subordinate officer accused Plaintiff of retaliating against her for whistleblowing, allegations which were later substantiated by the Army's Inspector General.  Plaintiff has attempted on at least five occasions to strike those findings from his military record.  This action under the Administrative Procedure Act ("APA") concerns the last two of those attempts: (1) a 2018 appeal before the Army Board for Correction of Military Records ("ABCMR" or "Board") in which the Board denied Plaintiff's claims of error on the merits and (2) a 2019 appeal where the ABCMR dismissed his appeal for lack of jurisdiction.

Before the court are two motions.  Plaintiff moves for partial summary judgment only as to the 2019 appeal, arguing that the Board rested its refusal to recognize jurisdiction on an incorrect statutory interpretation.  *See* Pl.'s Mot. for Partial Summ. J., ECF No. 15 [hereinafter Pl.'s Mot.]. Defendants[1] cross-move to dismiss both of Plaintiff's claims.  *See* Defs.' Mot. to Dismiss & Opp'n

---

[1] Defendants are Secretary of the Army Christine E. Wormuth, Secretary of Defense Lloyd J. Austin, III, the ABCMR, and the United States.

to Pl.'s Partial Mot. for Summ. J., ECF No. 19 [hereinafter Defs.' Mot.], Defs.' Mem. of L. in Supp. of Defs.' Mot, ECF No. 19-1 [hereinafter Defs.' Mem.].   Defendants contend that the ABCMR correctly dismissed Plaintiff's 2019 appeal for lack of jurisdiction, and they argue that Plaintiff's claim as to the 2018 appeal must be dismissed because it is not a reviewable final agency action.

For the reasons that follow, Plaintiff's motion is denied, and Defendants' motion is granted in part and denied in part.   The ABCMR's 2019 ruling will stand, but the court will not dismiss Plaintiff's claim respecting the Board's 2018 decision.

## II.

The relevant procedural background is as follows.   In 2011, one of Plaintiff's direct reports made two whistleblower-reprisal allegations against him, and in 2013, the Department of the Army Inspector General ("DAIG") "found them to be substantiated."   Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 164, 192, 199.   Plaintiff then filed his first application to the ABCMR in 2015 seeking, among other things, the "[r]epeal and expungement of the two [findings] of substantiated reprisal."   *Id.* ¶ 224(a).   The ABCMR rejected his application four months later.   *Id.*   The following year, Plaintiff filed his second application, which was also denied.   *Id.* ¶ 226.   On Plaintiff's third application in 2017, the ABCMR ordered the Department of Defense's Inspector General to review the substantiated whistleblower reprisal findings "with a full consideration of the additional evidence submitted by" Plaintiff.   *Id.* ¶¶ 230–232.   The DAIG reinvestigated and substantiated the allegations once more.   *Id.* ¶ 233.   Plaintiff sought reconsideration of the reinvestigation's findings in 2018, and the Board found that "there did not appear to be error or injustice in his case."   *Id.* ¶ 234; *see also* Compl., Ex. 24, ECF No. 1-23 [hereinafter 2018 ABCMR Denial], at 17.   Finally, Plaintiff filed a fifth application in 2019, which the Board "returned [to Plaintiff] without prejudice

and without Board action."  Compl., Ex. 25, ECF No. 1-24 [hereinafter 2019 ABCMR Decision], at 2.  The Board reasoned that amendments to the Military Whistleblower Protection Act stripped the Board of jurisdiction "to expunge substantiated investigator general findings of whistleblower retaliation."  *Id.* ¶ 236; *see also* 2019 ABCMR Decision at 2.

### III.

"[S]ummary judgment is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Louisiana v. Salazar*, 170 F. Supp. 3d 75, 83 (D.D.C. 2016). The district court "sits as an appellate tribunal," reviewing the entire case as a question of law.  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001) (collecting cases).  In this case, the court's function is "to determine whether the decision of the [ABCMR] was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *White v. Sec'y of the Army*, 878 F.2d 501, 503 (D.C. Cir. 1989).

### IV

The court first addresses the propriety of the Board's dismissal of Plaintiff's 2019 appeal and then considers whether the Board's 2018 decision is a reviewable final agency action.

### A.

### 1.

The question of the Board's authority to hear Plaintiff's 2019 appeal turns on the interplay between two statutes.  The first is 10 U.S.C. § 1552(a)(1).  It empowers the "Secretary of a military department" to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct or remove an injustice."  10 U.S.C. § 1552(a)(1).  A Secretary

exercises her correction authority through a "board[] of civilians of the executive part of that military department." *Id.*  In this case, that board is the ABCMR.

The second statute is the Military Whistleblower Protection Act ("MWPA").  The MWPA prohibits acts of reprisal against servicemembers who make certain protected whistleblowing communications.  10 U.S.C. § 1034(b).  The Inspectors General of the Department of Defense and the various military Departments are responsible for investigating allegations of reprisal and for making and reporting findings of their investigations.  *Id.* § 1034(c)–(e).

The MWPA also grants a military department Secretary certain authority with respect to acts of reprisal.  *See generally id.*  Prior to December 2016, the MWPA placed the responsibility of determining whether a prohibited act of reprisal was committed with the relevant military department Secretary.  It read as follows:

> **(f) Action in case of violations.—(1)** Not later than 30 days after receiving a report from the Inspector General under subsection (e), the . . . Secretary of the military department concerned, as applicable, shall determine whether there is sufficient basis to conclude whether a personnel action prohibited by subsection (b) has occurred.

10 U.S.C. § 1034(f)(1) (amended 2016).  Thus, under this earlier iteration of the MWPA, the Secretary concerned was tasked with "determin[ing]" whether "a [prohibited] personnel action . . . has occurred."  *See id.* § 1034(f)(2).  A Secretary also had the authority to "take any appropriate disciplinary action against the individual who committed [a] prohibited personnel action."  *Id.* § 1034(f)(2)(B).

In December 2016, Congress made multiple changes to § 1034(f) as part of the 2017 National Defense Authorization Act ("2017 NDAA").  National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 532, 130 Stat. 2000, 2120 (Dec. 23, 2016).  First, it changed the heading of subsection (f) from "Action in case of violations" to "Action in case of

*substantiated* violations." *Id.* § 532(a)(1) (emphasis added). It also removed the text that a Secretary "shall determine whether there is a sufficient basis to conclude whether a personnel action prohibited by subsection (b) has occurred" and replaced it with the Secretary "shall determine whether corrective or disciplinary action should be taken." *Id.* § 532(a)(2). The post-amendment subsection (f) now read:

> **(f) Action in case of substantiated violations.—(1)** Not later than 30 days after receiving a report from the Inspector General under subsection (e), the Secretary of Homeland Security or the Secretary of the military department concerned, as applicable, shall determine whether corrective or disciplinary action should be taken. If the Secretary concerned determines that corrective or disciplinary action should be taken, the Secretary shall take appropriate corrective or disciplinary action.

10 U.S.C. § 1034(f). Thus, through these amendments, Congress made clear that the Inspector General, not the Secretary, would have the final say on violations determinations.

Other amendments to § 1034(f) also expressed this legislative intent. The 2017 NDAA deleted the text "If the Secretary concerned determines under paragraph (1) that a personnel action prohibited by subsection (b) has occurred" in § 1034(f)(2) and replaced it with "If the Inspector General determines that a personnel action prohibited by subsection (b) has occurred." § 532(b)(1). 130 Stat. at 2120. And, in § 1034(f)(2)(B), it added a new requirement that the Secretary "submit to the Inspector General . . . [and] report to Congress" any "corrective or disciplinary action" taken. *Id.* at 2120–21.[2]

**2.**

The parties in this case dispute what effect, if any, the 2016 amendments to the MWPA had on the ABCMR's jurisdiction to hear Plaintiff's 2019 appeal. The ABCMR read those

---

[2] Section 1034(f)(2), as amended, now reads in its entirety as follows:

amendments to strip it of jurisdiction.  2019 ABCMR Decision at 1–2.  The Board's explanation

was thin, however.  The entirety of its reasoning was as follows:

> The National Defense Authorization Act for Fiscal Year 2017 made
> a number of amendments to the Military Whistleblower Protection
> Act.  The Congressional Conference Committee wrote that the
> amendments were intended to "clarify that when the secretary of a
> military department concerned receives a report from an inspector
> general that substantiates that a prohibited personnel action
> occurred, the secretary may consider whether to take corrective
> action but may not make a determination in such cases that a
> prohibited personnel action did not occur."
>
> Consequently, the [ABCMR] lacks authority to grant the requested
> relief.

*Id.*

Plaintiff contends that the ABCMR got it wrong.  He maintains that "[t]he ABCMR used

nonbinding legislative history for an unrelated statute, [the MWPA], to override the plain text of

its governing statute."  Pl.'s Mot., Pl.'s Mem. in Supp. of Pl.'s Mot., ECF No. 15 [hereinafter Pl.'s

Mem.], at 3.  The "governing statute" on which Plaintiff relies provides that a Secretary "may

correct *any* military record."  *Id.* at 4 (citing 10 U.S.C. § 1552(a)(1) (emphasis added)).  The

authority to correct "any" military record, Plaintiff argues, "clearly encompasses records of

---

(2) If the Inspector General determines that a personnel action prohibited by subsection (b) has
occurred, the Secretary concerned shall—

    (A) order such action as is necessary to correct the record of a personnel action prohibited
    by subsection (b), including referring the report to the appropriate board for the correction
    of military records; and

    (B) submit to the Inspector General a report on the actions taken by the Secretary pursuant
    to this paragraph, and provide for the inclusion of a summary of the report under this
    subparagraph (with any personally identifiable information redacted) in the semiannual
    report to Congress of the Inspector General of the Department of Defense or the Inspector
    General of the Department of Homeland Security, as applicable, under section 5 of the
    Inspector General Act of 1978 (5 U.S.C. App.).

10 U.S.C. § 1034(f)(2).

whistleblower reprisal findings" and therefore "renders the ABCMR's [2019 decision] unlawful under the APA." *Id.*  As for the 2016 amendments, Plaintiff reads them narrowly.  He says that their effect was to "remov[e] the ability of Secretaries of military departments to quietly kill off whistleblower finding reports in their offices without action or notification to the parties involved." *Id.* at 6.  Congress did not intend to remove the power of the various Boards for Correction of Military Records "to review whistleblower findings and punishments and to determine if they were in error or unjust." *Id.*

Defendants, for their part, back the Board's reading of the amended MWPA.  They contend that, "following the enactment of the fiscal year 2017 NDAA, the Secretary of the Army no longer possesses the statutory authority to assess or determine if a whistleblower protection act violation occurred." Defs.' Mem. at 12.  That change affected the Board's jurisdiction to review affirmative findings of whistleblower reprisal:  "Due to the fact that the [ABCMR] acts as an extension of the Secretary of the Army, it follows that the Board also lacks the statutory authority to modify [Inspector General]-approved whistleblower protection act investigation findings." *Id.*

The traditional rules of statutory construction support Defendants' reading of the controlling statutes.  *See Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (stating that the "traditional tools [of statutory construction] include examination of the statute's text, legislative history, and structure").  The 2016 amendments to the MWPA plainly stripped from military department Secretaries the authority they possessed to determine whether a servicemember had violated the MWPA.  Whereas the statute previously gave the Secretaries the responsibility to "determine whether there is sufficient basis to conclude whether a personnel action prohibited by subsection (b) has occurred," 10 U.S.C. § 1034(f)(1) (amended 2016), the amendments provided that the "*Inspector General* determines that a personnel action prohibited

by subsection (b) has occurred."  10 U.S.C. § 1034(f) (emphasis added).  The Secretary's role is

now limited to deciding whether "corrective or disciplinary action should be taken."  *Id.*  To

emphasize the Secretary's limited function, Congress deliberately changed the heading of section

(f)(2) from "Action in case of violations" to "Action in case of *substantiated* violations."  130 Stat.

at 2120 (emphasis added).  Also, through the title it gave to Section 532 of the 2017 NDAA—

"Modification of Whistleblower Protection Authorities to Restrict Contrary Findings of Prohibited

Personnel Action by the Secretary Concerned"—Congress made clear its purpose of taking fact-

finding authority away from department Secretaries.  *Id.*  And the legislative history puts a bow on

it.  The House of Representatives' report on the 2017 NDAA states that Section 532

> clarif[ies] that when the secretary of the military department
> concerned receives a report from an inspector general that
> substantiates that a prohibited personnel action occurred, the
> secretary may consider whether to take corrective action but may
> not make a determination in such cases that a prohibited personnel
> action did not occur.

H. R. Rep. No. 114-840, at 1021 (2016) (Conf. Rep.).

Although the 2016 amendments did not expressly mention the records-corrections boards,

their impact on the boards' jurisdiction is unmistakable.  It stands to reason that, if Congress

desired to remove from the military department Secretaries the power to make or second-guess a

finding of whistleblower reprisal, it would not have allowed a Secretary to retain that power

indirectly through the records-corrections process.  A Secretary acts through a records-corrections

board.  If the Secretary lacks the authority to undo an Inspector General reprisal finding, logically,

so too does the corrections board.

Plaintiff's reliance on the Secretary's authority, acting through a corrections board, to

"correct *any* military record" is misplaced.  Pl.'s Mem. at 4 (citing 10 U.S.C. § 1552(a)(1)).  It is

"[a] well established canon of statutory interpretation" that "the specific governs the general."

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (internal quotation marks omitted).  "The general/specific canon is perhaps most frequently applied to statutes in which a general permission . . . is contradicted by a specific prohibition . . . . To eliminate the contradiction, the specific provision is construed as an exception to the general one."  *Id.*  Here, by reading the ABCMR's authorizing statute to grant the Board jurisdiction over all military records except those pertaining to military-whistleblower-retaliation reports, the court is able to harmonize the Board's authorizing statute and § 1034(f) of the MWPA.[3]  *See Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 306 (D.C. Cir. 2014) (using the general/specific canon to find that one statute "authoriz[es] judicial review for the broad run of [Postal Regulatory] Commission decisions, with the specific exception that [another statute] establishes for decisions regarding closures and consolidations").

Plaintiff's reading also contradicts the will of Congress.  If accepted, it would mean here that the Secretary of the Army, working through ABCMR, could in effect reverse the Inspector General's findings that Plaintiff engaged in prohibited acts of reprisal.  Such a result would be flatly at odds with Congress's purpose in amending § 1034(f) of the MWPA.

Accordingly, the court finds that the ABCMR did not commit a legal error when it declined to hear Plaintiff's 2019 appeal.[4]

**B.**

The court turns next to Defendants' argument for dismissal of Plaintiff's second claim respecting the ABCMR's 2018 decision not to reconsider the Inspector General's reinvestigation

---

[3] This interpretation is further bolstered by the later-in-time canon of statutory construction.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand.").

[4] As a result of this ruling, the court need not consider Defendants' alternative argument that the ABCMR lacked authority to hear Plaintiff's 2019 appeal because the Inspector General's adverse findings are not a "military record" for purposes of § 1552.  *See* Defs.' Mem. at 12–14.

findings.  Defendants contend that the 2018 denial "does not constitute final agency action," and therefore is unreviewable under the APA, because "Plaintiff applied for the same relief in both 2018 and 2019" and because Plaintiff has acknowledged that the ABCMR's 2019 decision "was the final agency action in [his] case."  Defs.' Mem. at 14 (citing Compl. at 30).[5]

But this misconstrues the Complaint.  Plaintiff did not plead that the ABCMR's 2019 decision was the final, definitive agency action as to any and all of his ABCMR applications, but rather said that ruling "was *a* final agency action."  *See* Compl. ¶ 239 (emphasis added).  And Defendants summon no case or authority that stands for the proposition that separate decisions on separate applications seeking similar relief render only the later-in-time decision reviewable.

The two cases Defendants cite provide no support.  In *California v. U.S. Department of Justice*, the D.C. Circuit held that "[a]n agency action is final only if it imposes an obligation, denies a right, or fixes some legal relationship."  114 F.3d 1222, 1225 (D.C. Cir. 1997) (internal quotation marks omitted).  And in *Franklin v. Massachusetts*, the Supreme Court held that when the complained-of action is committed by the President, the action is unreviewable under the APA because "the President is not an agency within the meaning of the [APA]."  505 U.S. 788, 796 (1992).  *Franklin* is clearly inapposite, and *California* merely sets a standard that the ABCMR's 2018 denial meets.  The Board considered the sufficiency of "[t]he evidence presented" and found no "probable error or injustice" in the reinvestigation's adverse findings.  2018 ABCMR Denial at 4.  In so doing, it "fixed" the legal relationship between Plaintiff and the ABCMR and thus

---

[5] Defendants assert that the absence of final agency action means the court lacks "subject matter jurisdiction," but that is not correct.  The final agency action requirement is not jurisdictional.  *See Trudeau v. FTC*, 456 F.3d 178, 184–85 (D.C. Cir. 2006) ("[W]here judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is *not* jurisdictional." (internal quotation marks omitted)).

constituted a reviewable final agency action.   Pl.'s Partial Opp'n to Defs.' Mot., ECF No. 20 [hereinafter Pl.'s Opp'n], at 2.

Defendants suggest an alternative ground for dismissing Plaintiff's claim regarding the 2018 decision.  They maintain that, as a result of the 2016 amendments to the MWPA, the Inspector General's reinvestigation findings are not "military records" that the ABCMR can correct.  Defs' Mem. at 14–15; *see supra* note 4.  The court need not evaluate that argument, however, because the Board did not offer that explanation as a reason for ruling against Plaintiff.  The court cannot "uphold the Board's decision" on a particular basis "where it did not address [the] argument[] in its decision."  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 n.16 (D.C. Cir. 1995); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## V.

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment, ECF No. 15, is denied, and Defendants' Motion to Dismiss, ECF No. 19, is granted in part and denied in part. The parties shall meet and confer and submit a Joint Status Report by July 22, 2022, which proposes a schedule for further proceedings.

Dated:  July 12, 2022

Amit P. Mehta
United States District Court Judge